## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALEXANDER MARKET INC.** ) | |
| **3600 12ᵗʰ STREET, N.E.** ) | |
| **WASHINGTON, DC 20017,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) **Case No. _____** | |
| ) | |
| **UNITED STATES OF AMERICA** ) | |
| **c/o U.S. Attorney's Office** ) | |
| **601 D Street NW** ) | |
| **Washington, D.C. 20001,** ) | |
| ) | |
| **Defendant.** ) | |
| / | |

## COMPLAINT

Plaintiff Alexander Market Inc. d/b/a Newton Food Mart, 3600 12ᵗʰ Street, N.E., Washington, D.C. 20017, by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America and alleges:

1.      This action seeks judicial review of the Final Agency Decision ("FAD"), dated December 14, 2023, issued by the U.S. Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS"), which imposed a six-month term disqualification on Newton Food Mart's participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2.      Plaintiff Alexander Market, Inc. is a resident and citizen of the District of Columbia.

3.      Alexander Market, Inc. is the owner of Newton Food Mart, the retail food store located at 3600 12ᵗʰ Street, N.E. Washington, D.C. 20017 ("Newton Food Mart").

4.      Newton Food Mart is a "Retail Food Store" as such term is defined in 7 C.F.R. § 271.2.

5.      Defendant United States of America is the federal government.

6.      USDA is an executive branch department of the federal government.

7.      FNS is an agency of the USDA.

8.      FNS generally administers and has promulgated regulations governing the SNAP pursuant to a delegation by Congress in Section 4 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2013, and from the USDA Secretary.

9.      Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to more than 42 million Americans and more than 138,000 residents of the District of Columbia. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

10.     Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS asserts that it has regulatory authority to authorize and disqualify retail food stores from participation in SNAP.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, 28 U.S.C. §§ 1331 and 1346.

12.     Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because Newton Food Mart, the retail food store that is the subject of this action, is located in this judicial district and because the United States of America is deemed a resident of this district and has consented to suit in this district.

13.     Newton Food Mart has exhausted all applicable administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

14.     Newton Food Mart is a convenience store that serves an impoverished community in northeast DC.

15.     At all times relevant hereto, Newton Food Mart is and has been authorized by FNS to participate in SNAP as an authorized retailer.

16.     At all times relevant hereto, Newton Food Mart has trained its employees regarding SNAP in accordance with FNS requirements.

17.     At all times relevant hereto, Newton Food Mart properly supervised its employees, including regarding SNAP transactions and program requirements.

18.     Newton Food Mart sells SNAP-eligible staple food items.

19.     A majority of items sold at Newton Food Mart are SNAP-eligible items.  Newton Food Mart also sells non-food items that are not SNAP-eligible items, including paper bowls, disposable cutlery, sandwich bags, plastic plates, paper plates, and plastic cups.

20.     The Food and Nutrition Act does not define "common nonfood items."

21.     FNS's SNAP regulations do not define "common nonfood items."

22.     FNS has not issued any publicly issued guidance defining "common nonfood items."

23.     Paper bowls, disposable cutlery, sandwich bags, plastic plates, paper plates, and plastic cups are not "common nonfood items" under FNS's regulations or otherwise.

24.     No other SNAP-authorized retail food store in the vicinity carries as wide an array of SNAP-eligible items at comparable prices.

25.     At all times relevant hereto, Newton Food Mart is and has been authorized by FNS to redeem SNAP benefits. Newton Food Mart's FNS-issued SNAP authorization number is 0306034.

26.     On or about July 14, 2022, FNS's Retailer Operations Division ("ROD") sent Newton Food Mart a letter charging the Store with accepting SNAP benefits in exchange for common non-food

items, in alleged violation of FNS's SNAP regulations contained at 7 C.F.R. § 278.2(a) ("Charge Letter").

27.     The Charge Letter alleged that Newton Food Mart sold paper bowls, disposable cutlery, sandwich bags, plastic plates, paper plates, and plastic cups in exchange for SNAP benefits ("EBT") on three occasions between May 30, 2022, and June 25, 2022, to an undercover FNS investigator.

28.     On August 24, 2022, Newton Food Mart submitted its response to the Charge Letter.

29.     On August 30, 2022, FNS issued its initial determination ("Initial Determination"). In the Initial Determination, FNS concluded that the alleged violations took place, declined to issue a warning or assess a Hardship CMP, and disqualified the Store from participation in SNAP for six months.

30.     The Initial Determination, which consisted of a two-page form letter, advised that FNS found that "the violations cited in our charge letter occurred at your firm." The Initial Determination also "determined that you are not eligible for the CMP because there are other authorized retail stores in the area selling as large a variety of staple foods at comparable prices."

31.     On September 1, 2022, Newton Food Mart timely sought administrative review of the Initial Determination pursuant to 7 C.F.R. Part 279.

32.     On September 27, 2022, Newton Food Mart submitted its response in support of its Request for Administrative Review of the Initial Determination ("Newton Food Mart's Response").

33.     Newton Food Mart's Response requested that FNS's Administrative and Judicial Review Branch ("ARB") reverse the Initial Determination and either issue it a warning or assess a Hardship CMP. Newton Food Mart's Response was supported by a declaration from Alexander Anenia, Newton Food Mart's owner.

34.     On December 14, 2023, FNS Administrative Review Officer ("ARO") Amie Churchill issued the FAD.  A copy of the FAD is attached hereto as Exhibit A.

35.     In its FAD, FNS rejected all of Newton Food Mart's arguments, notwithstanding the evidence submitted by the Store, and affirmed the Initial Determination that imposed a six-month term disqualification from SNAP upon Newton Food Mart.

36.     The FAD failed to address Newton Food Mart's argument that paper bowls, disposable cutlery, sandwich bags, plastic plates, paper plates, and plastic cups are not "common nonfood items."

37.     The FAD rejected Newton Food Mart's argument that the management of the Store was not careless and did not poorly supervise its employees, concluding without any factual basis that "[t]he more likely explanation is that store ownership and/or management failed to properly train and subsequent supervise the employees."

38.     The FAD failed to address Newton Food Mart's argument that a warning was appropriate.

39.     The FAD rejected Newton Food Mart's argument that a CMP was appropriate, noting only that "The Retailer Operations Division identified similarly stocked or larger SNAP authorized retail stores located within one mile of Appellant, including a superstore and a medium grocery store. There is also no evidence that Appellant sells its inventory at unusually low prices in comparison to nearby stores."  FAD, at 8.

40.     The FAD contained no discussion or analysis of whether any of those other SNAP-authorized stores carried as large a variety of staple food items at comparable prices.

### FNS's SNAP REGULATIONS

41.     Pursuant to 7 C.F.R. § 278.6(e)(5), the penalty for a firm not previously sanctioned for accepting SNAP benefits in exchange for "*common nonfood items due to carelessness or poor supervision*" (emphasis added) is a six-month term disqualification from participation in SNAP.

42.     FNS is required to "send the firm a warning letter if violations are too limited to warrant a disqualification." 7 C.F.R. § 278.6(e)(7).

43.     Pursuant to FNS's regulation governing Hardship CMPs, 7 C.F.R. § 278.6(f)(1), FNS is required to impose a CMP as a sanction in lieu of disqualification when doing so would "cause hardship to SNAP households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."

## COUNT I - JUDICIAL REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R. § 279

44.     Plaintiff Newton Food Mart repeats and re-alleges paragraphs 1 through 43 as if fully set forth herein.

45.     Newton Food Mart denies that it engaged in violations of FNS's SNAP regulations or that a six-month disqualification from SNAP was an appropriate penalty.

46.     Newton Food Mart did not sell any "common nonfood items" in exchange for SNAP benefits.

47.     At no time did Newton Food Mart poorly supervise its employees.

48.     No evidence in the Administrative Record exists that supports FNS's determination that Newton Food Mart poorly supervised its employees.

49.     At no time did Newton Food Mart act carelessly in permitting the sale of "common nonfood items" in exchange for SNAP benefits.

50.     No evidence in the Administrative Record exists that supports FNS's determination that Newton Food Mart acted carelessly in permitting the sale of "common nonfood items" in exchange for SNAP benefits.

51.     FNS's determination that Newton Food Mart sold "common nonfood items" in exchange for SNAP benefits was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

52.     FNS's determination that Newton Food Mart poorly supervised its employees was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

53.     FNS's determination that Newton Food Mart acted carelessly in permitting "common nonfood items" to be sold in exchange for SNAP benefits was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence.

54.     FNS's six-month disqualification of Newton Food Mart from participation in SNAP and denial of its request for a Hardship CMP was invalid, unreasonable, arbitrary and capricious, and unsupported by the evidence. *See Kim v. United States*, 903 F. Supp. 118 (D.D.C. 1995) (reversing FNS's imposition of a six-month term disqualification where there was no evidence of intent, no evidence that a pattern of selling ineligible items due to carelessness existed, no prior warnings were given, and no trafficking took place).

55.     FNS's six-month disqualification of Newton Food Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to consider all evidence related to the Store.

56.     FNS failed to consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

57.     FNS's six-month disqualification of Newton Food Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to properly consider all available evidence in determining whether staple food items were available at comparable prices at other SNAP-authorized stores in the vicinity.

58.     FNS's analysis of other SNAP-authorized stores in the vicinity failed to consider where SNAP beneficiaries who shopped at Newton Food Mart resided.

59.     FNS officials and employees did not visit other SNAP-authorized stores in the vicinity during late May or June 2022.

60.     FNS did not conduct a comparison of prices of staple food items at Newton Food Mart and other SNAP-authorized stores in the vicinity during late May or June 2022.

61.     FNS's six-month disqualification of Newton Food Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS's analysis of other SNAP-authorized stores in the vicinity (1) failed to consider where SNAP beneficiaries who shopped at Newton Food Mart resided; (2) was not based on any store visits to other SNAP-authorized retailers in the vicinity during late May or June 2022; and (3) was not based on a comparison of prices of staple food items at Newton Food Mart and other SNAP-authorized stores in the vicinity during late May or June 2022.

62.     FNS's six-month term disqualification of Newton Food Mart from participating in SNAP and denial of its request for a Hardship CMP should be reversed because FNS failed to interview any SNAP beneficiaries whose EBT cards were used at the store during late May or June 2022.

63.     FNS's six-month term disqualification of Newton Food Mart from participating in SNAP was improper because it was not based on evidence that Newton Food Mart poorly supervised its employees.

64.     FNS's six-month term disqualification of Newton Food Mart from participating in SNAP was improper because FNS had no evidence that Newton Food Mart acted carelessly in permitting the exchange of nonfood items for SNAP benefits.

65.     FNS's denial of Newton Food Mart's request for a Hardship CMP was not rationally related to any legitimate governmental interest.

66.    FNS's denial of Newton Food Mart's request for a Hardship CMP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

67.    FNS's failure to issue a warning to Newton Food Mart based on the sale of ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

68.    FNS's imposition of a six-month term disqualification based on the sale of SNAP-ineligible items is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

69.    FNS's denial of Newton Food Mart's request for a Hardship CMP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

70.    FNS's denial of Newton Food Mart's request for a Hardship CMP, which was based entirely upon circumstantial evidence, represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

71.    At no time did FNS provide Newton Food Mart with a warning that non-food items, including (but not limited to) paper bowls, disposable cutlery, sandwich bags, plastic plates, paper plates, and plastic cups are not eligible for the redemption of SNAP benefits prior to issuance of the Charge Letter.

72.    FNS should have provided Newton Food Mart with a warning that non-food items, including (but not limited to) paper bowls, disposable cutlery, sandwich bags, plastic plates, paper plates, and plastic cups are not eligible for the redemption of SNAP benefits prior to the issuance of the Charge Letter.

73.    FNS should have provided Newton Food Mart with a warning that non-food items, including (but not limited to) paper bowls, disposable cutlery, sandwich bags, plastic plates, paper

plates, and plastic cups are not eligible for the redemption of SNAP benefits after the first alleged violation.

74.     In the event that FNS provided Newton Food Mart with a warning that non-food items, including (but not limited to) paper bowls, disposable cutlery, sandwich bags, plastic plates, paper plates, and plastic cups are not eligible for the redemption of SNAP benefits after the first alleged violation, no further violations would have occurred.

75.     In the event that FNS provided Newton Food Mart with a warning that non-food items, including (but not limited to) paper bowls, disposable cutlery, sandwich bags, plastic plates, paper plates, and plastic cups are not eligible for the redemption of SNAP benefits after the first alleged violation, Newton Food Mart would have re-trained its employees regarding SNAP requirements.

76.     FNS had no basis to have concluded that paper bowls, disposable cutlery, sandwich bags, plastic plates, paper plates, and plastic cups are "common nonfood items."

77.     A SNAP retailer charged with the exchange of common nonfood items is eligible for imposition of a Hardship CMP in lieu of disqualification in the event that there are no other SNAP-authorized retail food stores in the vicinity selling as large a variety of staple food products at comparable prices.

78.     Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the variety of staple food products carried at Newton Food Mart or any other SNAP-authorized retailer in the vicinity.

79.     Prior to issuing the Initial Determination, FNS failed to conduct any analysis of the pricing of staple food products carried at Newton Food Mart or any other SNAP-authorized retailer in the vicinity.

80.     No other SNAP-authorized retailer in the vicinity sells as wide an array of SNAP-eligible items at comparable prices as at Newton Food Mart.

81.    FNS's decision to deny Newton Food Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contains no analysis regarding the prices charged for comparable staple food items by other SNAP-authorized retailers in the vicinity.

82.    FNS's decision to deny Newton Food Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the varieties of staple food items carried by other SNAP-authorized retailers in the vicinity.

83.    FNS's decision to deny Newton Food Mart's request for a Hardship CMP is legally deficient and erroneous, including because the FAD contained no analysis regarding the prices of comparable staple food items carried by other SNAP-authorized retailers in the vicinity.

84.    Whether staple food items at comparable prices are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

85.    Whether as wide a variety of staple food items are available at other SNAP-authorized retailers in the vicinity is a mandatory element that FNS must consider in determining whether to grant a Hardship CMP.

86.    7 C.F.R. § 278.6(f)(1) provides, in pertinent part, that "FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to SNAP households because there is no other authorized retail food store in the area selling **as large a variety of staple food items at comparable prices**." (emphasis added).

87.    FNS, in issuing the FAD, relied upon records and other information never provided to Newton Food Mart.

88.    In its FAD, FNS relied upon data concerning other SNAP-authorized stores not "in the vicinity" of the Store.

89.     FNS uses a one-mile radius for determining whether other SNAP retailers are "in the vicinity" in determining whether to assess a Hardship CMP.

90.     FNS calculates distance "as the crow flies," not walking or driving distance when determining whether there are other stores "in the vicinity" in the context of deciding whether to assess a Hardship CMP.

91.     FNS's one-mile radius for determining whether other SNAP retailers are "in the vicinity" for hardship CMP purposes is arbitrary and capricious.

92.     FNS's one-mile radius for determining whether other SNAP retailers are "in the vicinity" for hardship CMP purposes ignores that most SNAP beneficiaries do not have cars and do not (and cannot) walk up to two miles (round trip) to shop at a SNAP-authorized retailer.

93.     No factual support exists for FNS's decision to deny Newton Food Mart's request for a Hardship CMP.

94.     FNS relied upon undisclosed analyses, including analyses of other SNAP-authorized retail food stores, which were never provided to Newton Food Mart.

95.     The FAD was not based upon any declarations or affidavits from a USDA or FNS employee or contractor whose identity was disclosed to Newton Food Mart.

96.     The FAD is FNS's final administrative determination that its six-month disqualification of Newton Food Mart from participation as an authorized SNAP retailer was properly imposed.

97.     The FAD is subject to judicial review and a trial *de novo* pursuant to 7 U.S.C. §§ 2023(a)(13), (15).

98.     Judicial reviews pursuant to 7 U.S.C. §§ 2023(a) are not governed by the Administrative Procedure Act and the evidence is not limited to the administrative record prepared by FNS.

99.     The FAD was based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

100.   FNS incorrectly determined that Newton Food Mart was not eligible for a Hardship CMP, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

101.   FNS's denial of Newton Food Mart's request for a Hardship CMP was premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. § 278.6.

102.   In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Newton Food Mart.

103.   Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the term disqualification of Newton Food Mart from SNAP and determined that the alleged violations took place.

104.   Plaintiff respectfully requests a *de novo* review of FNS's FAD in which FNS affirmed the decision in the Initial Determination to decline to issue a warning.

105.   Plaintiff respectfully requests a *de novo* review of FNS's FAD, which affirmed the decision in the Initial Determination to decline to assess a Hardship CMP.

WHEREFORE, Plaintiff Newton Food Mart respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a)   Reversing the FAD;

(b)   Vacating FNS's Initial Determination;

(c)   Preliminarily enjoining FNS from disqualifying Newton Food Mart from participating in SNAP during the pendency of this action;

(d)   Permanently enjoining FNS from denying Newton Food Mart authorization to participate in SNAP based upon the Initial Determination and the FAD;

(e)     In the alternative, directing FNS to impose a Hardship Civil Monetary Penalty in

an amount consistent with FNS's regulations;

(f)     Awarding Newton Food Mart an amount equal to its reasonable attorneys' fees and

costs, including pursuant to the Equal Access to Justice Act; and

(g)     Such other and further relief as the Court may deem just and proper.


                            Respectfully submitted this 9th day of January 2024.


                    By:     /s/ Stewart D. Fried
                            Stewart D. Fried, Esq.
                            D.C Bar No. 457801
                            Olsson Frank Weeda Terman Matz PC
                            2000 Pennsylvania Avenue, N.W.
                            Suite 4003
                            Washington, D.C. 20006
                            (202) 518-6326 – Direct Dial
                            (202) 234-3550 – Facsimile
                            sfried@ofwlaw.com

                    *Attorneys for Plaintiff Alexander Market Inc.*